***UNITED STATES DISTRICT COURT***
***DISTRICT OF MAINE***

| | | |
|---|---|---|
| ***UNITED STATES OF AMERICA,*** | ***)*** | |
| | ***)*** | |
| ***Plaintiff*** | ***)*** | |
| | ***)*** | |
| ***v.*** | ***)*** | ***No. 2:14-cv-00521-DBH*** |
| | ***)*** | |
| ***JOHN H. KIMBALL JR., et al.,*** | ***)*** | |
| | ***)*** | |
| ***Defendants*** | ***)*** | |

## *MEMORANDUM DECISION AND ORDER ON MOTION TO AMEND*

One month after this court entered an order granting in part and denying in part a motion by the United States of America ("United States") for summary judgment on both counts of its amended complaint, the United States moved to file a second amended complaint alleging additional facts and asserting new theories of liability. *See* United States' Motion for Leave To File a Second Amended Complaint ("Motion") (ECF No. 48) at 2-4, ¶¶ 1-5; Decision and Order on Plaintiff's Motion for Summary Judgment ("S/J Decision") (ECF No. 46) at 1.

I conclude that the United States fails to make the requisite showing of good cause for its tardy bid to amend its complaint pursuant to Federal Rule of Civil Procedure 16(b). Accordingly, I deny the Motion. I also deny the requests of defendants John H. Kimball Jr.[1] and the Kimball Family Realty Trust ("Trust") that the court award them costs and attorney fees associated with responding to the Motion and/or impose sanctions on the United States pursuant to Federal Rule of Civil Procedure 11. *See* Defendant John H. Kimball Jr.'s Objection to Plaintiff's Motion for Leave To File a Second Amended Complaint ("Kimball Objection") (ECF No. 52) at 9-10;

[1] Kimball is listed on CM-ECF as John H. Kimball, Jr. However, his filings indicate that he does not use a comma before the "Jr."

Defendant Kimball Family Realty Trust's Objection to Plaintiff's Motion for Leave To File a Second Amended Complaint ("Trust Objection") (ECF No. 53) at 9-10.

**I. Applicable Legal Standards**

The First Circuit's caselaw "clearly establishes that Rule 16(b)'s 'good cause' standard, rather than [Federal] Rule [of Civil Procedure] 15(a)'s 'freely give[n]' standard, governs motions to amend filed after scheduling order deadlines." *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 327 (1st Cir. 2008) (citation omitted). The First Circuit has explained that "[f]or Rule 16(b) to operate effectively, litigants cannot be permitted to treat a scheduling order as a frivolous piece of paper idly entered, which can be cavalierly disregarded without peril." *O'Connell v. Hyatt Hotels of P.R.*, 357 F.3d 152, 155 (1st Cir. 2004) (citation and internal quotation marks omitted).

The First Circuit has elaborated:

> A motion to amend a complaint will be treated differently depending on its timing and the context in which it is filed. . . . As a case progresses, and the issues are joined, the burden on a plaintiff seeking to amend a complaint becomes more exacting. Scheduling orders, for example, typically establish a cut-off date for amendments (as was apparently the case here). Once a scheduling order is in place, the liberal default rule [of Fed. R. Civ. P. 15(a)] is replaced by the more demanding "good cause" standard of Fed. R. Civ. P. 16(b). This standard focuses on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent. Where the motion to amend is filed after the opposing party has timely moved for summary judgment, a plaintiff is required to show "substantial and convincing evidence" to justify a belated attempt to amend a complaint.

*Steir v. Girl Scouts of the USA*, 383 F.3d 7, 11-12 (1st Cir. 2004) (citations, internal quotation marks, and footnotes omitted).

Assuming that the court finds that good cause exists to set aside the scheduling order's deadline, Rule 15(a)(2) instructs the court to "freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). Pursuant to Rule 15(a)(2), leave to amend should be granted

in the absence of reasons "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. . . . ." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

The United States filed the instant motion on July 22, 2016, *see* Motion at 1, one month after the court issued its summary judgment decision on June 24, 2016, *see* S/J Decision at 1, and 10 days after the court issued an order placing this case on its September 6, 2016, trial list and scheduling a final pretrial conference for August 9, 2016, *see* ECF No. 47. The parties' discovery deadline expired on January 15, 2016, following two extensions. *See* ECF Nos. 17, 25, 31. The deadline to amend pleadings expired on July 16, 2015, more than a year before the motion here at issue was filed. *See* ECF No. 17. At no time has either party moved to extend that deadline. In the circumstances, the United States must provide "substantial and convincing evidence" to justify its belated attempt to amend its complaint. *Steir*, 383 F.3d at 12 (citation and internal quotation marks omitted).

## II. Factual Background

As Judge Hornby noted in ruling on the plaintiff's motion for summary judgment, this is a federal tax lawsuit in which the United States seeks two forms of relief: (i) to reduce to judgment the unpaid taxes, penalties, and interest that defendant Kimball owes the Internal Revenue Service ("IRS") (Count One), and (ii) to enforce federal tax liens for those amounts against property owned by the co-defendant Trust – specifically, a ski condominium ("Ski Condo") at Mt. Abram, Maine (Count Two). *See* S/J Decision at 1, 3-4; *see generally* United States' Amended Complaint ("Operative Complaint") (ECF No. 18).

Judge Hornby granted summary judgment in the United States' favor on Count One, determining that it was entitled to judgment as a matter of law for unpaid taxes and penalties in the amount of $1,090,700.05, interest, and other statutory additions accruing from and after March 11, 2016. *See id.* at 2-3. He denied summary judgment on Count Two, in which the United States sought to enforce its liens against the Ski Condo on the theory that the Trust holds the Ski Condo as Kimball's nominee. *See id*. at 3-18. He noted that, although the United States might be able to persuade a factfinder at trial that the Trust was and is a fiction and that Kimball treated the Ski Condo as his own, the United States had not demonstrated its entitlement to summary judgment as a matter of law. *See id*. at 17-18.

The United States now seeks to update sums included in Count One to conform to those set forth on summary judgment and to expand Count Two from six to 45 paragraphs, alleging not only that the Trust holds the Ski Condo as Kimball's nominee but also that (i) Kimball fraudulently conveyed the Ski Condo to the Trust in violation of 14 M.R.S.A. §§ 3571-82 in 1989, when he purchased it in the name of the Trust or, in the alternative, in 1993, when he resigned as trustee of the Trust, and (ii) the United States obtained a resulting/constructive trust against the Ski Condo when Kimball conveyed it to the Trust in 1989 or, in the alternative, resigned as trustee in 1993, with the aim of defrauding the United States. *See* [Proposed] Second Amended Complaint ("Proposed Complaint"), Exh. 2 (ECF No. 48-2) to Motion.

Among the allegations that the United States seeks to add in support of Count Two are the following:

> 13. Kimball is an attorney . . . who has consistently made efforts to hide his assets to avoid the [IRS's] legitimate collection efforts.

14. Kimball had an unpaid tax liability prior to August 2, 1989, for at least the tax year 1986. . . .[2]

* * *

24. Kimball hand-picked the present trustee, who is . . . Kimball's sister. Kimball also concealed his interest in the Property in at least two other litigation proceedings, including his divorce and bankruptcy proceeding.

* * *

28. Prior to creating the Kimball Trust, which was created on August 2, 1989, Kimball did not file his 1986, 1987 and 1988 federal tax returns (Forms 1040) even though he had an obligation to file the Forms 1040 during those years and did not receive an extension to file them. In fact, Kimball did not file those returns or any other return for the preceding tax years until after Kimball purportedly resigned as being the Kimball Trust's trustee in 1993.

29. The Kimball Trust was formed one day prior to the purchase of the Property.

***

31. The IRS assigned a revenue officer to contact Kimball concerning his failure to timely file his Forms 1040 for the years ending 1992, 1993, 1994 and 1995. Those returns were not filed until August 1996.

32. In 1999, Kimball filed for Chapter 11 bankruptcy protection and the United States was a creditor. Kimball did not list the Property as an asset on his bankruptcy schedules.

***

36. Kimball has a history of accruing a federal tax liability and then waiting many years to file Forms 1040 for the delinquent tax periods.

37. At the time Kimball created the Kimball Trust, Kimball had not filed his 1986 Form 1040 even though he had taxes due for that year. Kimball did not file his tax returns for those years until May 16, 1994, more than seven years (eight for the 1986 tax year) after those returns were due.

38. The purchase of the Property by Kimball in the name of the Kimball Trust must be avoided because the Kimball Trust itself never paid any consideration for

---

[2] The United States proposes to append a chart detailing the dates that taxes were due and the dates on which Kimball filed his tax returns for the years 1986 through 1995. *See* Proposed Complaint ¶ 14. The chart indicates that, for tax years 1986 through 1990, Kimball did not file tax returns until May 16, 1994, for tax year 1991, he did not file a tax return until November 3, 1994, and for tax years 1992 through 1995, he did not file tax returns until August 19, 1996. *See id*.

> the Property. Additionally, the purchase of the Property occurred after Kimball accrued a federal tax debt for the year ending 1986 and was actually fraudulent as to the United States. Furthermore, Kimball was insolvent (or rendered insolvent) at the time he purchased the Property in the Kimball Trust's name.

*Id*. ¶¶ 13-14, 24, 28-29, 31-32, 36-38.

## III. Discussion

The defendants object to the Motion on the grounds that the United States failed to exercise due diligence, the amendments would prejudice them, and the amendments are futile. *See* Kimball Objection at 2-9; Trust Objection at 2-9. Even assuming *arguendo* that the proposed amendments are not futile, the United States fails to make the requisite showing of good cause for its belated attempt to amend its complaint.

In essence, the United States admits that it realized it should rethink its litigation strategy to allege that Kimball made fraudulent transfers in 1989 and/or 1993 after reviewing Judge Hornby's summary judgment decision, in which he noted that the IRS had *not* charged Kimball with fraudulent transfers. *See* Motion at 3-4, ¶¶ 4-5. It states that, upon receiving the decision, its counsel "reviewed the record, obtained additional information from the [IRS], and determined that the United States should: (1) update Kimball's federal tax debt in Count I consistent with the declaration filed in support of the motion for summary judgment; and (2) expand on the facts in Count I [sic] as well as the reasons why the United States is entitled to the relief sought in that count." *Id*. at 3, ¶ 5. It proposes to expand Count Two to add two new theories for the enforcement of its federal tax lien against the Ski Condo: that Kimball fraudulently conveyed the Ski Condo to the trust in either 1989 or 1993, in violation of the Maine Uniform Fraudulent Transfer Act, 14 M.R.S.A. §§ 3571-82, and that the United States obtained a resulting/constructive trust against the Ski Condo in either 1989 or 1993. *See* Proposed Complaint ¶¶ 34-55.

No reason appears why the United States could not have reviewed whatever materials it says it has now reviewed, or proceeded on these two additional theories, when it filed this complaint on December 5, 2014, *see* ECF No. 1, let alone prior to the expiration of the deadline to amend pleadings on July 16, 2015, *see* ECF No. 17. Instead, it waited until July 22, 2016, when trial was imminent. This is hardly a showing of due diligence. *See, e.g., Rexnord Indus., LLC v. Bigge Power Constructors*, 947 F. Supp.2d 951, 962 (E.D. Wis. 2013) ("Rexnord's reason for waiting until now to seek leave to amend is that it has changed its litigation strategy in light of the court's summary-judgment decision. Every district court that has considered the question has concluded that a party's changing its litigation strategy is not good cause for amending a scheduling order under Rule 16(b)(4). Moreover, it strikes me as obvious that changing litigation strategies after a previous strategy has failed does not constitute good cause. Accordingly, Rexnord's motion for leave to file an amended complaint will be denied.") (citations omitted).

To the extent that the United States seeks to amend Count One of the Operative Complaint to update the sums set forth on summary judgment, *compare* Operative Complaint ¶¶ 9-10 *with* Proposed Complaint ¶¶ 9-10, no useful purpose would be served in doing so. Judge Hornby has already granted summary judgment in the United States' favor in the amount of the updated sums. *See* S/J Decision at 2-3.

The United States nonetheless argues that the Motion should be granted because – as in *McGowen v. Four Directions Dev. Corp.*, No. 1:12-cv-00109-JAW, 2013 WL 2455977 (D. Me. June 6, 2013), and in contrast to *Flood v. Bank of Am. Corp.*, No. 1:12-cv-00105-GZS, 2012 WL 6111451 (D. Me. Dec. 10, 2012) – the proposed amendments would not prejudice the defendants or alter the focus of this case. *See* Motion at 4-6, ¶¶ 7-10. However, as the defendants rejoin, *see* Kimball Objection at 3-4, 7-9; Trust Objection at 3-4, 7-9, this case aligns more closely with *Flood*,

in which this court denied a tardy bid to amend a complaint, than with *McGowen*, in which this court granted such a motion.

In *McGowen*, the plaintiff filed a motion to amend her complaint on May 3, 2013, more than eight months after the parties' deadline to amend pleadings had passed, approximately a month after their discovery deadline had expired, and 12 days before a Local Rule 56(h) conference had been scheduled to discuss the defendants' notice of intent to file for summary judgment. *See McGowen*, 2013 WL 2455977, at *1. The court found that, although the plaintiff had "made at best a marginal showing of good cause for her delay" in moving to extend the parties' deadline to amend pleadings, in that she had discovered one of the documents on which she relied to justify the amendment by January 11, 2013, "other considerations favor[ed] relaxing the Rule 16(b) standard." *Id*. at *5.

The court observed that, while, "[i]n many of the cases where courts have disallowed amendments under Rule 16(b), the proposed amendments would have substantially altered the plaintiff's case[,]" the plaintiff's proposed amendments "merely refine[d] and add[ed] detail to the allegations already before the Court." *Id*. The court explained that the plaintiff did "not propose any new legal theories; in fact, she propose[d] eliminating two Counts." *Id*. It noted: "Her new factual allegations [were] generally consistent with the factual allegations in the original Complaint and her amended pleading merely place[d] formally before the Court what the parties exchanged during the recent court-sanctioned discovery." *Id*.

The court observed that the parties disagreed on whether the defendants would require additional discovery as a result of the amendment but that, without knowing what was contemplated, it could not resolve the issue. *See id*. at *6. It directed the parties to confer on that

matter and left the door open to the filing by the defendants of a motion for sanctions on account of the plaintiff's failure to comply with the court's scheduling order. *See id*. at *6-*7.

In *Flood*, by contrast, the court denied the plaintiff's motion to amend, filed after the close of the parties' discovery deadline, when (i) the plaintiff waited to file the motion until more than two months after the deposition during which she claimed to have learned of the information warranting the amendment and had herself been present at the meeting that was the subject of the relevant deposition testimony, and, (ii) while the plaintiff stated that she wished to "clarify" that her discrimination claim was based on retaliation as well as her sexual orientation, her proposed amendment "not only introduce[d] a new legal theory but change[d] the entire focus of the case and the type of evidence which defendant might want to present." *Flood*, 2012 WL 6111451, at *1-*3. The court observed that the defendant "quite rightly suggest[ed] that if the amendment [were] allowed, discovery [would have to] be reopened to allow it to explore, at a minimum, the basis for Flood's new found belief as to the basis for her termination." *Id*. at *3.

In this case, unlike in *McGowen*, the United States has not made even a marginal showing of good cause for its delay. Indeed, it has not even argued, as did the plaintiff in *Flood*, that its bid to amend its complaint is based on any information that came to light during discovery. Rather, unlike in either *McGowen* or *Flood*, in which discovery had closed but no motion for summary judgment had as yet been filed, the United States has sought to remedy deficiencies brought to light by the court's decision on summary judgment.

Further, unlike in *McGowen*, and as in *Flood*, the United States' proposed amendments would add new legal theories that significantly, if not entirely, alter the focus of its case. The United States, which had not charged Kimball with fraudulent transfers, *see* S/J Decision at 16-17,

now seeks not only to flesh out its existing "nominee" theory but also to add two new theories predicated on alleged fraudulent transfers, *see* Proposed Complaint ¶¶ 13-55.

The United States maintains that these amendments would have little, if any, impact on the case, given that (i) it seeks to include "additional facts that were referenced in the parties' summary judgment filings" and in the summary judgment decision, (ii) it disclaims any need for additional discovery, (iii) the defendants would have no need for additional discovery given that the additional facts were known to them and are based entirely on their own conduct, and (iv) its new theories are simply variations on the existing theme that Kimball used the Trust to avoid the United States' legitimate collection efforts. *See* Motion at 5-6, ¶¶ 8-10. The United States notes that Judge Hornby observed that, per the Internal Revenue Manual, nominee situations generally involve a fraudulent conveyance or transfer of a taxpayer's property to avoid legal obligations. *See* United States' Reply to the Defendants' Objection to the Motion To File the Second Amended Complaint ("Reply") (ECF No. 54) at 2; S/J Decision at 6-7 n.17.

Conversely, the defendants protest that the allowance of these amendments would prejudice them, requiring them to answer the new complaint, conduct discovery, and file motions. *See* Kimball Objection at 4; Trust Objection at 4. They do not explain what discovery would be necessitated or what motions they would need to file. *See id*. However, I cannot conclude that their claim of prejudice is entirely unfounded. The United States seeks to expand the scope of Count Two to include facts and allegations beyond those set forth on summary judgment; for example, that Kimball was insolvent in 1989 and 1993, sought to conceal his interest in the Ski Condo in two separate court proceedings, and that both the 1989 purchase and the 1993 resignation were "actually fraudulent as to the United States." *Compare* Plaintiff United States' Statement of Facts in Support of Its Motion for Summary Judgment (ECF No. 41) *with* Proposed Complaint. It

is plausible that the defendants would require additional discovery to explore the underpinnings of those allegations. At the least, the grant of the Motion would require the defendants to rethink their trial strategy, in itself a prejudice. *See, e.g., Rexnord*, 947 F. Supp.2d at 963 ("Requiring [the defendant] to defend against a new litigation strategy after it has already invested heavily in defending itself against Rexnord's original, opposite strategy is itself a form of prejudice.").[3]

For all of these reasons, the United States falls short of demonstrating good cause to justify its eleventh-hour attempt to amend its complaint. The Motion, accordingly, is denied.[4]

A final matter remains. The defendants not only request that the court deny the Motion but also that it award them costs and attorney fees associated with their responses to the Motion and, on the court's "own motion[,]"impose sanctions on the United States pursuant to Federal Rule of Civil Procedure 11. *See* Kimball Objection at 9-10; Trust Objection at 9-10. I decline to do so.

First, the request is effectively a Rule 11 motion that does not follow proper Rule 11 procedure. *See* Fed. R. Civ. P. 11(c)(2) ("A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets."). Second, while I have

[3] The United States cites *Hanlin v. Mitchelson*, 794 F.2d 834, 841 (2d Cir. 1986), for the proposition that a district court abused its discretion in denying a request to amend a complaint, after a summary judgment motion had been filed, to add new claims that were "merely variations on the original theme[,]" and *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 996 (8th Cir. 2001), for the proposition that a district court abused its discretion in denying a request to amend a complaint to add a new party when that party already had "the bulk of the evidence" required to defend itself. *See* Reply at 2, 4. *Hanlin* is materially distinguishable in that it was decided pursuant to the liberal Rule 15(a) standard for amending complaints rather than the Rule 16(b) good cause standard and concerned a *pro se* plaintiff who filed her motion after the defendant filed a motion for summary judgment – not, as here, after the court had issued a decision on it. *See Hanlin*, 794 F.2d at 840-41. *Roberson* is materially distinguishable in that it too was decided pursuant to the liberal Rule 15(a) standard and that, in conjunction with deciding the defendants' summary judgment motions, the district court prohibited the *pro se* plaintiff from amending his complaint to name the city as a defendant because he had failed to do so after having been granted leave to do so 11 months earlier. *See Roberson*, 241 F.3d at 994-96.

[4] As in *Flood*, I make no ruling on the admissibility at trial of evidence concerning Kimball's alleged fraudulent transfers insofar as such evidence bears on the United States' nominee theory. *See Flood*, 2012 WL 6111451, at *3.

determined that the Motion is without merit, I have no basis on which to conclude that it was meant to harass or to increase the cost of litigation needlessly or that the United States' factual contentions lack evidentiary support, as the defendants argue. *See* Kimball Objection at 7; Trust Objection at 7. Accordingly, the request for sanctions is denied.

## IV. Conclusion

For the foregoing reasons, the Motion is **DENIED**, and the defendants' request for costs and attorney fees and/or Rule 11 sanctions is **DENIED**.

## ***NOTICE***

***In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.***

***Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to any further appeal of this order.***

Dated this 28th day of September, 2016.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge